UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

CAP CITY DENTAL LAB, LLC,

             Plaintiff,

    v.

RICHARD LADD, et al.,

             Defendants.

Case No. 2:15-CV-2407
CHIEF JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Kimberly A. Jolson

## OPINION AND ORDER

This matter is before the Court for consideration of Defendants Christopher "Chad" Ladd ("Chad Ladd"), NDL Acquisition, Inc., Northwood Dental Lab, Inc., Northwood Dental Lab East, Inc., and Ladd Investments, LLC's (collectively, "Defendants") Motion for Judgment on the Pleadings (ECF No. 41), pursuant to Federal Rule of Civil Procedure 12(c). For the reasons that follow, Defendants' motion is **GRANTED in part and DENIED in part.**

### I. BACKGROUND

Plaintiff Cap City Dental Lab, LLC ("Cap City" or "Plaintiff") commenced this action by filing a Complaint (ECF No. 2) on April 15, 2015. Defendants Christopher "Chad" Ladd, NDL Acquisition, Inc., Northwood Dental Lab, Inc., Northwood Dental Lab East, Inc., and Ladd Investments, LLC filed a for Judgment on the Pleadings (ECF No. 14) on August 5, 2015. Plaintiff then filed an Amended Complaint (the "Am. Compl.;" ECF No. 35) on November 16, 2015.

In the Amended Complaint, Plaintiff set forth nine causes of action, each arising out of a series of alleged transactions between Plaintiff and the various Defendants. Specifically, Plaintiff alleges (1) Breach of Contract; (2) Account; (3) Unjust Enrichment; (4) Promissory Estoppel; (5)

Fraud and Misrepresentation; (6) Civil Conspiracy; (7) violations of the Ohio Corrupt Practices Act; (8) Piercing the Corporate Veil; and (9) Fraudulent Transfer.

Plaintiff alleges that, "between approximately November 5, 2014 and December 15, 2014," Defendants solicited dental appliance products and services from Plaintiff by submitting over 250 written work authorizations (Am. Compl. ¶¶ 40-41), commonly known in the dental industry as "prescriptions." Plaintiff alleges that it mailed these products to the various Defendants at a single location (the "Winston Street address"). Am. Compl. ¶¶ 44-45, ECF No. 35. Plaintiff alleges that the Winston Street address, owned by Defendant Ladd Investments, LLC (Am. Compl. ¶ 23), is the principal place of business of Defendants NDL Acquisition, Inc., Northwood Dental Lab East, Inc., and Ladd Investments, LLC (Am. Compl. ¶¶ 7, 10, 12). Plaintiff also alleges it was the mailing address of Defendants Northwood Dental Lab East, Inc., Northwood Dental Labs of Central North Carolina, LLP, and Oral32 By Design. Am. Compl. ¶¶ 27, 33, 46.

Plaintiff further alleges that, "between approximately November 5, 2014 and December 15, 2014," the Defendants made "numerous oral and written representations" that they would pay Plaintiff for these products and services (Am. Compl. ¶¶ 3-4), and that "[i]n response to such … representations, Plaintiff accepted said prescriptions and provided dental appliance products and services to Defendants." Am. Compl. ¶ 4. Plaintiff also alleges that on November 28, 2014, Christopher Pendry ("Pendry"), Plaintiff's managing member, met with Defendants Chad Ladd and Richard "Rickey" Ladd at the Winston Street address "in order to develop their business relationship." Am. Compl. ¶¶ 50-51.

Plaintiff alleges that a single phone number appeared on "the majority" of the prescriptions (Am. Compl. ¶ 56) and on the Northwood Dental Labs website, and that when

Plaintiff called that number it was told that the company was now Oral32 By Design, but that "it was the same people and the same service." Am. Compl. ¶ 58.

The Amended Complaint references two previous lawsuits and corresponding default judgments against several of the Defendants involving, among other things, breach of contract claims and unpaid debts. Am. Compl. ¶¶ 60-65; Exs. E1-E3, F1-F2. Plaintiff alleges that Defendants collectively owe Plaintiff a principal balance of $32,289.00 for the dental products and services rendered, as well as interest. Am. Compl. ¶ 67.

Defendants filed a second Motion for Judgment on the Pleadings (ECF No. 41) on December 4, 2015. In this second Rule 12(c) motion, Defendants request judgment on the pleadings with regard to Count 5 (Fraud and Misrepresentation), Count 6 (Civil Conspiracy), Count 7 (Ohio Corrupt Practices Act), Count 8 (Piercing the Corporate Veil), and Count 9 (Fraudulent Transfer).

This case was reassigned to the undersigned on May 2, 2016 (ECF No. 61).

## II. STANDARD OF REVIEW

The Federal Rules of Civil Procedure permit a party to move for judgment on the pleadings "after the pleadings are closed—but early enough not to delay trial . . ." Fed. R. Civ. P. 12(c). A moving party may receive judgment under Rule 12(c) after clearly establishing that no material issue of fact remains unresolved and that they are entitled to judgment as a matter of law.

Courts consider Rule 12(c) motions under the same standard of review applicable to a Rule 12(b)(6) motion for dismissal. *Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 761 (6th Cir. 2006); s*ee also Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 697 (6th Cir. 2005); *Ferron v. Zoomego, Inc.*, 276 F.App 473, 475 (6th Cir. 2008) (citing *Ziegler v.*

*IBP Hog Market, Inc.*, 249 F.3d 509, 511-12 (6th Cir. 2001)). Under this standard, the court "must construe the complaint in a light most favorable to [the plaintiff], accept all well-pled factual allegations as true, and determine whether [the plaintiff] undoubtedly can prove no set of facts in support of those allegations that would entitle them [to] relief." *Bishop v. Lucent Technologies, Inc.,* 520 F.3d 516, 519 (6th Cir. 2008) (citing *Harbin–Bey v. Rutter,* 420 F.3d 571, 575 (6th Cir. 2005)).

A claim may survive a Rule 12(c) motion only if the complaint "contain[s] either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Bishop v. Lucent Technologies, Inc.,* 520 F.3d 516, 519 (6th Cir. 2008) (quoting *Meziboy v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005)). Further, Rule 8(a)(2) requires the plaintiff to provide a "short and plain statement" in sufficient detail to make each claim "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) at 555, 570*; Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Supreme Court provides a two-pronged approach for determining whether a claim meets this standard. *Iqbal*, 556 U.S. at 679. First, the court must "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* Second, the court must consider the complaint's "well-pleaded factual allegations" to "determine whether they plausibly give rise to an entitlement to relief." *Id.* A claim satisfies the facial-plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. The complaint's factual allegations must be sufficient "to raise a right to relief above the speculative level. *Twombly*, 550 U.S. at 555. A claim will fail this test if it "tenders 'naked assertion[s]'

4

devoid of 'further factual enhancement.'" *Iqbal*, 556 at at 678 (quoting *Twombly*, 550 U.S. at 557).

## III. COUNT 5 – FRAUD AND MISREPRESENTATION

### A. Elements

In Ohio, the elements of a cause of action for intentional misrepresentation or fraud are:

(a) a representation or, where there is a duty to disclose, concealment of a fact,
(b) which is material to the transaction at hand,
(c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to the veracity of the representation that knowledge may be inferred,
(d) with the intent of misleading another into relying upon it,
(e) justifiable reliance upon the representation or concealment, and
(f) a resulting injury proximately caused by the reliance.

*Equal Justice Found. v. Deutsche Bank Trust Co. Americas*, No. C2-04-228, 2006 WL 2795211, at *5 (S.D. Ohio Sept. 27, 2006) (citing *Burr v. Stark Cty. Bd. of Commrs.*, 23 Ohio St. 3d 69, 491 N.E.2d 1101, 1102 (Ohio 1986)).

### B. Fraud vs. Misrepresentation

Contrary to Defendants' unsupported assertion that "misrepresentation is not a cognizable claim under Ohio law" (Def. Mot. for J. on the Pleadings, at 5), Ohio courts recognize distinct causes of action for fraud and negligent misrepresentation. *See Rheinfrank v. Abbot Labs.*, No. 1:13-CV-144, 2013 WL 4067826, at *2 (S.D. Ohio Aug. 12, 2013) ("[A] claim for fraud can be based on either a misrepresentation or, along with an alleged duty to disclose, concealment, whereas a claim for negligent misrepresentation requires an allegation that the defendant affirmatively supplied false information.") (quoting *Andersons, Inc. v. Consol, Inc.*, 348 F.3d 496, 506 (6th Cir. 2003)). Because the "Fraud and Misrepresentation" section of the Amended Complaint raises no issues that turn on this distinction, however, the Court finds that Plaintiff

sets forth no basis for negligent misrepresentation liability independent of its fraud claim, and the Court will therefore review this claim as a single cause of action.

### C. Particularity Under Rule 9(b)

In their Motion for Judgment on the Pleadings, Defendants argue that the Amended Complaint "fails to state the time, place or other salient details of the alleged fraudulent scheme" (Def. Mot. for J. on the Pleadings, at 6), and fails to include "factual allegations regarding concealment of facts, or any specific statements that allege Defendants intentionally attempted to mislead Plaintiff," *Id.* at 7, in violation of Federal Rule of Civil Procedure 9(b).

In order to satisfy 9(b)'s particularly requirement, "a party must 'allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme, the fraudulent intent of [the other party]; and the injury resulting from fraud.'" *Equal Justice Found. v. Deutsche Bank Trust Co. Americas*, No. C2-04-228, 2006 WL 2795211, at *4 (S.D. Ohio Sept. 27, 2006) (*quoting Coffey v. Foamex*, 2 F.3d 157, 161-62 (6th Cir. 1993)). In other words, the complaint "must contain, at a minimum, the 'who, what, when, where, and how of the alleged fraud.'" *Id.* (*quoting Sanderson v. HCA*, 447 F.3d 873, 877 (6th Cir. 2006)).

The Sixth Circuit "reads this rule liberally," requiring plaintiffs to allege, "at a minimum," the "time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme, the fraudulent intent of the defendants; and the injury resulting from fraud." *Kiker v. Smithkline Beecham Corp.*, No. 2:14-CV-2164, 2015 WL 5768389, at *5 (S.D. Ohio Sept. 30, 2015) (internal citations omitted) (quoting *Ballan v. Upjohn Co.*, 814 F. Supp. 1375, 1385 (W.D. Mich. 1992)). However, "allegations of fraudulent misrepresentation must be made with sufficient particularity and with a sufficient factual basis to support an inference that they were knowingly made." *Id.* The "threshold test" for determining the

sufficiency of a fraud claim is "whether the complaint places the defendant on 'sufficient notice of the misrepresentation,' allowing the defendants to 'answer, addressing in an informed way plaintiff's claim of fraud.'" *Id.* at *5 (quoting *Coffey v. Foamex L.P.*, 2 F.3d 157, 161-62 (6th Cir. 1993) (internal citation omitted)).

### D. "Who," "Where," "When," and "How"

Upon consideration, the Court finds that the allegations in the Amended Complaint adequately address the "who," "where," "when," and "how" of Plaintiff's fraud claim. *See Equal Justice Found*. 2006 WL 2795211, at *4. Plaintiff supplements its Amended Complaint with documents supporting an inference that the various Defendants ordered the products and services at issue (Exs. A1-A5, B, C, D), and alleges "numerous oral and written representations" that Defendants could and would pay for those products and services (the "how"). Am. Compl. ¶ 43.

Plaintiff's fraud claim also incorporates by reference paragraphs 1 through 96 of its Amended Complaint, including allegations that "[b]etween approximately November 5, 2014 and December 15, 2014, Defendants made numerous oral and written representations (the "how") that they would pay Plaintiff for the dental appliance products and services" and that "[i]n response to such ... representations, Plaintiff accepted [the] prescriptions and provided dental appliance products and services to Defendants." Am. Compl. ¶¶ 43-44. Plaintiff further alleges that its managing member, Pendry, personally met with Defendants Chad Ladd and Rickey Ladd at the Winston Street property on November 28, 2014. Am. Compl. ¶ 51.

While the Amended Complaint does not specifically indicate which Defendant or Defendants made each representation, the inclusion of the specific date, street address, and parties present at the November 28 meeting suffices to plausibly identify the location, date, and

7

makers of the alleged fraudulent statements (the "who," "where," and "when"). *Cf. Rheinfrank v. Abbot Labs.*, 2013 WL 4067826, at *5 (citation omitted) (noting that "courts in this district have found an allegation of [a defendant accused of fraud] living in a particular jurisdiction has satisfied the 'where' element of Rule 9(b)" (citation omitted) and that "[w]ith regard to the 'when' element, a Southern District of Ohio court held that allegations 'meet the heightened Rule 9(b) standard of pleading' when they 'include the approximate time … of the statements…" (quoting *Kuvedina*, 2013 WL 2243744, at *8)).

### E. Resulting Injury

Plaintiff alleges that it "was proximately injured as a result of its reliance [on Defendants' representations]" (Am. Compl. ¶ 95), that Defendants incurred a debt to Plaintiff of $32,289.00 plus substantial interest as a result of the alleged transactions (Am. Compl. ¶ 67), and that to date Defendants "have made zero payments" on that amount (Am. Compl. ¶ 66).

Plaintiff supplements its Amended Complaint with an invoice (Ex. B) detailing a number of transactions with Defendants under the collective account code "NORTHWDL." This document indicates a series of transactions and corresponding debts over an extended period of time, ranging from November 5, 2014 to March 31, 2015. *Id.* However, the "who," "where," and "when" of Plaintiff's fraud claim are only adequately pled under Rule 9(b) regarding the meeting on November 28, 2014. Am. Compl. ¶ 51. Therefore, Plaintiff could only have proceeded in reliance on that meeting's alleged misrepresentations by accepting and filling prescriptions after that date.

Accordingly, the Court finds that Plaintiff sufficiently pleads the element of resulting injury, but only with regard to prescriptions accepted and filled after November 28, 2014.

### F. Content of Misrepresentations ("What")

The Court now turns its attention to the content of the alleged misrepresentations (the "what"). The fraudulent content Plaintiff alleges is twofold: first, that Defendants "would pay Plaintiff for the services and products rendered," and second, that Defendants "had the ability to pay for the materials ordered." Am. Compl. ¶¶ 91-92. More succinctly, Plaintiff alleges representations that Defendants both "*could* and *would* pay for the materials ordered." Am. Compl. ¶ 92 (emphasis added). In order to determine whether Plaintiff presents a viable fraud claim, the Court must consider each of these two alleged representations separately.

### i. "Defendants *could* pay"

Plaintiff fails to adequately allege that Defendants fraudulently represented that they *could* pay for the materials.

Plaintiff states that the alleged misrepresentations were made "with knowledge of their falsity or with utter disregard and recklessness regarding their truth or falsity" and with "the intent to mislead Plaintiff into rendering services to … Defendants in reliance on the representations." Am. Compl. ¶¶ 92-93. Allegations of fraudulent misrepresentation must be pled with "sufficient particularity and with a sufficient factual basis to support an inference that they were knowingly made." *Kiker*, 2015 WL 5768389, at *5; *see also Rheinfrank*, 2013 WL 4067826, at *4 ("Scienter may be alleged generally, but there must be factual allegations to make scienter plausible.").

Plaintiff alleges that, as of the November 28 meeting, Defendants' facility "did not appear to be a fully operational business, as there were no employees in the lab, and no dental products were visible," and that Pendry "was prohibited from entering the lab's receiving and shipping area." Am. Compl. ¶¶ 52-53. Even taken as true, allegations that a business did not

appear fully operational on the day after the Thanksgiving holiday are insufficient to support an inference that Defendants believed or had reason to believe that they would be unable to pay for the materials ordered.

Accordingly, to the extent that Plaintiff's fraud claim is predicated on the representation that Defendants *could* pay for the materials, it cannot survive a Rule 12(c) review.

### ii. "Defendants *would* pay"

In contrast, allegations that Defendants represented that they would pay but failed to make any payments (Am. Compl. ¶¶ 54-57, 66, 76) plausibly support an inference of fraudulent intent.

For the foregoing reasons, Defendants' Motion for Judgment on the Pleadings is **DENIED** with respect to Plaintiff's fraud claim to the extent that it is predicated on the representation that Defendants *would* pay for the materials ordered, and **GRANTED** to the extent that it is predicated on the representation that Defendants *could* pay for the materials ordered. The Court notes that Plaintiff's surviving fraud claim, as pled in the Amended Complaint, is necessarily limited to debts incurred after and in reliance on the Parties' meeting on November 28, 2014.

### IV. CIVIL CONSPIRACY

The Ohio Supreme Court defines civil conspiracy as "a malicious combination of two or more persons to injury another in person or property, in a way not competent for one alone, resulting in actual damages." *In re Nat'l Century Fin. Enterprises, Inc.*, 504 F. Supp. 2d 287, 326 (S.D. Ohio 2007). The elements of a civil conspiracy are: "(1) a malicious combination; (2) [of] two or more persons; (3) injury to person or property; and (4) [the] existence of an unlawful act independent from the actual conspiracy." *Id.* Defendants argue that Plaintiff "fail[s] to

10

allege facts required for the first, second and fourth" of these elements.  Defs.' Mot. for J. on the Pleadings, at 8-9.

Proof of malicious combination does not require Plaintiff to show "an express agreement between defendants, but only a common understanding or design, even if tacit, to commit an unlawful act."  *In re Nat'l Century Fin. Enterprises, Inc.*, 504 F. Supp. 2d 287, 326 (S.D. Ohio 2007).  Further, Plaintiff "need not show that co-conspirators made an agreement as to every detail of the plan; rather, [Plaintiff] must show that the co[-]conspirators 'shared in the general conspiratorial objective.'"  *Id* (citation omitted).

### A. Malicious Combination

"The 'malice' in 'malicious combination' is legal or implied malice, 'which the law infers from or imputes to certain acts,' and is defined as 'that state of mind under which a person does a wrongful act purposely, without a reasonable or lawful excuse, to the injury of another.'"  *Click v. Unknown Ex'r or Adm'r of Estate of Click*, No. 05CA38, 2007 WL 1732768, at *4 (Ohio Ct. App. June 13, 2007).  This sort of malice may be "inferred from or imputed to a common design by two or more persons to cause harm to another by means of an underlying tort, and need not be proven separately or expressly."  *Id.*

In the "Civil Conspiracy" section of its Amended Complaint, Plaintiff makes fifteen separate allegations "upon information and belief." Am. Compl. ¶¶ 97-122.  Defendants argue that such allegations "must be considered conclusions and so ignored in deciding this Motion." Defs.' Mot. for J. on the Pleadings, at 8.  Under *Twombly-Iqbal,* "'conclusory statements' or 'naked assertions devoid of further factual enhancement' do not insulate a complaint from a motion to dismiss." *In re Darvocet, Darvon, & Propoxyphene Products Liab. Litig.*, 756 F.3d 917, 931-32 (6th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (citations omitted)).

However, the mere fact that an allegation is prefaced with the phrase "upon information and belief" does not automatically render it a conclusory statement, so long as it is plausibly supported by well-pled factual allegations. *See Antioch Litig. Trust v. McDermott Will & Emery LLP*, 738 F. Supp. 2d 758, 765 (S.D. Ohio 2010) ("[Q]ualifying words such as 'upon information and belief' and 'appear' are the appropriate manner to plead when a plaintiff is drawing reasonable inferences from facts."); *Cassidy v. Teaching Co., LLC*, No. 2:13-CV-884, 2014 WL 1599518, at *4 (S.D. Ohio Apr. 21, 2014) (Finding that, in that case, "most of Plaintiff's allegations made 'upon information and belief' are plausible inferences based on Plaintiff's factual allegations.").

Indeed, "[t]he Sixth Circuit has permitted pleading on information and belief in certain circumstances, such as when a plaintiff may lack personal knowledge of a fact, but have sufficient data to justify interposing an allegation on the subject or be required to rely on 'information furnished by others.'" *Apex Tool Grp., LLC v. DMTCO, LLC*, No. 3:13-CV-372, 2014 WL 6748344, at *9 (S.D. Ohio Nov. 26, 2014). Pleading on information and belief is not prohibited "where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible." *Id.* However, pleading on information and belief "is not an appropriate form of pleading if the matter is within the personal knowledge of the pleader." *Id.*

Plaintiff alleges "[u]pon information and belief" that Defendants "maliciously made plans to enter into agreements with Plaintiff for dental appliance products and services knowing that Defendants had no intention of paying for [them]," and that Defendants "clearly and unambiguously promised to pay Plaintiff for the services and products furnished … without any intention of honoring this promise, thereby causing injury to Plaintiff." Am. Compl. ¶¶ 105, 109.

In combination with Pendry's alleged November 28 meeting with the Ladds (Am. Compl. ¶¶ 50-51), the Court finds these are well-pled, not merely conclusory.

Upon consideration, the Court finds that the aforementioned "information and belief" allegations, together with the well-pled allegations in Plaintiff's surviving fraud claim, plausibly support the inference that Defendants shared in the general conspiratorial objective and acted with the necessary form of malice to satisfy the element of malicious combination.

### B. "Two or More Persons"

Defendants argue that "[i]t is impossible for a single entity, acting alone, to commit civil conspiracy. Equally, Chad Ladd, through Northwood Dental, cannot conspire with himself." Defs.' Mot. for J. on the Pleadings, at 8. In making this assertion, Defendants rely upon the intracorporate conspiracy doctrine, that "a corporation cannot conspire with its own agents or employees." *Ohio Bureau of Workers' Comp. v. MDL Active Duration Fund, Ltd.,* 476 F. Supp. 2d 809, 825 (S.D. Ohio 2007); *see also Dunning v. Varnau*, No. 1:14CV932, 2015 WL5729332, at *14 (S.D. Ohio Sept. 30, 2015).

However, when multiple corporate entities are involved in a conspiracy claim, "a conspiracy may be established and is not barred by the intracorporate conspiracy doctrine even though an individual defendant is an officer or agent of both corporations." *Ohio Bureau of Workers' Comp.,* 476 F. Supp. 2d at 825. Here, Defendant Chad Ladd is an officer or statutory agent of five of the corporate Defendants, each of which was allegedly involved in a conspiracy. Additionally, rather than claiming that Chad Ladd "conspired with himself," Plaintiff alleges conspiracy between three individuals (Defendants Chad Ladd, Rickey Ladd, and Brittney Martin Ladd), as well as the corporate Defendants. Am. Compl. ¶¶ 98-102. Thus, Defendants are not aided by the intracorporate conspiracy doctrine.

13

Nor can Defendants prevail on the argument that "Plaintiff's invoices show only transactions with one entity, which it marked as 'NORTHWDL[.']" Defs.' Mot. for J. on the Pleadings, at 8. In its Memorandum in Opposition, Plaintiff explains that it "does not distinguish its customers on its account ledger where all final destination shipments are directed at a single address." Pl.'s Mem. in Opp'n., at 10. Several Exhibits attached to the Amended Complaint plausibly indicate transactions with at least two distinct entities (namely, Defendants Oral 32 By Design and Northwood Dental Lab), and lend credence to Plaintiff's assertion that these Defendants' orders were all shipped to the same Winston Street address. *Id.* at Exs. A1-A4; Ex. C. Another Exhibit indicates a transaction with yet another entity, identified as "Ladd Dental Lab," with the same shipping address. *Id.* at Ex. D. Therefore, Defendants' argument that Plaintiff conducted the relevant transactions with only a single entity is not persuasive.

### E. Resulting Injury.

Plaintiff alleges that "[a]s a result of the conspiracy … Plaintiff has been deprived of the sum of [$32,389.00] on the principal amount, pre-filing interest of [$1,858.82], as well as other fees and costs." Am. Compl. ¶ 119. Accordingly, the Court finds that the final element of injury is well-pled.

### F. Underlying Unlawful Act.

"An underlying unlawful act or tort is required before a party can prevail on a civil conspiracy claim. An act of fraud can serve as the underlying unlawful act or tort." *Ohio Bureau of Workers' Comp.*, 476 F. Supp. 2d at 825 (internal citations omitted). Because Plaintiff's fraud claim survives the instant review and is incorporated by reference into its civil conspiracy claim (Am. Compl. ¶ 97), the Amended Complaint sufficiently establishes the element of an underlying unlawful act. Therefore, it is unnecessary at this stage for the Court to

inquire into the sufficiency of the other underlying acts (Am. Compl. ¶¶ 115, 118, 121) alleged in this section.

### G. Conclusion.

For the foregoing reasons, Defendants' Motion for Judgment on the Pleadings is **DENIED** with respect to Plaintiff's civil conspiracy claim.

## V. COUNT 7 – OHIO CORRUPT PRACTICES ACT

### A. OCPA Claims in General.

The OCPA is "based on the federal RICO statute 18 U.S.C. § 1962 *et seq.*" *Canterbury v. Columbia Gas of Ohio*, No. C2-99-1212, 2001 WL 1681132, at *11 (S.D. Ohio Sept. 25, 2001) (internal citation omitted). To bring a viable civil claim under the OCPA, a plaintiff must plead the following elements with particularity: "(1) that conduct of the defendant[s] involves the commission of two or more specifically prohibited state or federal criminal offenses, (2) that the prohibited criminal conduct … constitutes a pattern of corrupt activity, and (3) that the defendant has participated in the affairs of an enterprise or has acquired and maintained an interest in the control of an enterprise." *Ogle v. BAC Home Loans Servicing LP*, 924 F. Supp. 2d 902, 913 (S.D. Ohio 2013) (citing *Kondrat v. Morris*, 118 Ohio App.3d 198, 692 N.E.2d 246, 253 (1997)).

### B. "Two or More" Underlying Criminal Offenses.

In the "Ohio Corrupt Practices Act" section of its Amended Complaint, Plaintiff alleges violations of Ohio Revised Code Sections 1315.55 (money laundering), 2913.02 (theft), 2913.05 (telecommunications fraud), and 2913.51 (receiving stolen property). Am. Compl. ¶ 129.

### i. § 2913.02 (Theft).

Under Ohio law, a person commits theft when, "with purpose to deprive the owner of property or services," he or she:

> knowingly obtain[s] or exert[s] control over either the property or services in any
> of the following ways: (1) Without consent of the owner or person authorized to
> give consent; (2) Beyond the scope of the express or implied consent of the owner
> or person authorized to give consent; (3) By deception; (4) By threat; [or] (5) By
> intimidation.

Ohio Rev. Code Ann. § 2913.02 (West 2014).

Plaintiff alleges that Defendants, "with purpose to deprive Plaintiff of dental products and services, knowingly obtained dental products and services by deception, in violation of [R.C. §] 2913.02(A)(3)." Am. Compl. ¶ 126. Plaintiff alleges earlier in the Amended Complaint that Defendants submitted prescriptions affirmatively demonstrating their desire to obtain these products (Am. Compl. ¶ 40; Exs. A1-A5), that Plaintiff sent the requested dental products to the Winston Street address by mail (Am. Compl. ¶ 45), and that Plaintiff submitted invoices memorializing these deliveries (Am. Compl. ¶ 45; Ex. C). This satisfies the element of Defendants "knowingly obtaining or exerting control" over Plaintiff's property. Because Plaintiff's fraud claim plausibly indicates that Defendants induced this delivery through a fraudulent misrepresentation and with the requisite intent, the Amended Complaint sufficiently establishes that Defendants "obtained control" over these products "by deception."

Therefore, the Amended Complaint adequately alleges the underlying offense of theft by deception.

### ii. § 1315.55 (Money Laundering).

Plaintiff alleges that Defendants "conducted numerous transactions with Plaintiff with the purpose to promote, manage, establish, and carry on corrupt activity and to receive the proceeds of such activity, in violation of [R.C. §] 1315.55(A)(3) and by regularly committing theft by deception." Am. Compl. ¶ 125.

This statute prohibits "conduct[ing] or attempt[ing] to conduct a transaction with the purpose to promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on of corrupt activity."  Ohio Rev. Code § 1315.55(A)(3).  To establish a violation of this section, the pleader must show that the perpetrator "conducted the transaction knowing that the property involved in the transaction is the proceeds of some form of unlawful activity with the purpose of committing or furthering the commission of corrupt activity."  *Bradley v. Miller*, 96 F. Supp. 3d 753, 778 (S.D. Ohio 2015).

As used in the Ohio Revised Code, "corrupt activity" means "engaging in, attempting to engage in, conspiring to engage in, or soliciting, coercing, or intimidating another person to engage in any of a series of listed criminal offenses."  *State v. Pugh*, No. 24905, 2010 WL 239603, at *3 (Ohio Ct. App. June 16, 2010).  The Amended Complaint adequately alleges two forms of "corrupt activity," namely, fraud and civil conspiracy to commit fraud. However, the "corrupt" character of these acts inheres exclusively in the alleged fraudulent statements made at the November 28 meeting.  As such, any transactions which followed or preceded such representations could not serve to "promote, manage, establish, carry on, or facilitate" corrupt acts; at best, they were a proximate result of a fully executed act of fraud.

Further, the Amended Complaint fails to allege with specificity that Defendants actually carried out any "transactions."  Aside from the alleged acts of fraud, Plaintiff merely states that Defendants submitted written communications to Plaintiff (the prescriptions), and that Plaintiff mailed "all completed work" to the Winston Street address, "regardless of which Defendant submitted the prescription."  Am. Compl. ¶ 45.  Plaintiff does not allege that Defendants carried out a single affirmative act with regard to any transaction; in fact, Plaintiff's case necessarily

relies on allegations that Defendants "did not make any payments to Plaintiff" for the services and products rendered. Am. Compl. ¶ 54.

Therefore, the Amended Complaint fails to sufficiently establish the underlying offense of money laundering.

### iii. § 2913.05 (Telecommunications Fraud).

Ohio law prohibits any person who has "devised a scheme to defraud" from "knowingly disseminat[ing], transmit[ting], or caus[ing] to be disseminated or transmitted by means of a … telecommunication, telecommunications device, or telecommunications service any writing … with purpose to execute or otherwise further the scheme to defraud." Ohio Rev. Code § 2913.05(A). As is the case for fraud generally, "the elements of an OCPA violation [based on a fraudulent scheme] must be pleaded with specificity." *Canterbury*, 2001 WL 1681132 at *11.

Plaintiff alleges that Defendants "devised a scheme to defraud Plaintiff of dental products and services," and "knowingly transmitted or caused to be transmitted or caused to be transmitted via telecommunication a written prescription with the purpose to execute or otherwise further the scheme to defraud, in violation of [O.R.C. §] 2913.05(A)." Am. Compl. ¶ 127. Plaintiff further alleges that, "[b]etween approximately November 5, 2014 and December 15, 2014," Defendants submitted over 250 written "prescriptions" to Plaintiff. *Id.* ¶¶ 40-41. Thus, while Plaintiff fails to identify telecommunication as the specific method of delivery, the Court disagrees with Defendants' contention that Plaintiff "fails to allege any communications Defendants sent to the Plaintiff." Defs.' Mot. for J. on the Pleadings, at 13.

However, the Amended Complaint offers no allegations to support an inference of fraudulent intent with regard to any of these prescriptions. At no point does Plaintiff allege that

these prescriptions constituted an act of fraud; rather, the only fraudulent representations well-pled into the Amended Complaint are those allegedly made at the November 28 meeting.

Therefore, the Amended Complaint does not sufficiently establish an underlying offense of telecommunications fraud.

### iv. § 2913.51 (Receiving Stolen Property).

Plaintiff alleges that Defendants "received, retained, and disposed of Plaintiff's property knowing or having reasonable cause to believe that the property had been obtained through the commission of theft, in violation of [O.R.C. §] 2913.51(A)."  Am. Compl. ¶ 128.

In determining whether a defendant had reasonable cause to believe that property was stolen, Ohio courts have considered such factors as: "(a) the defendant's unexplained possession of the merchandise; (b) the nature of the merchandise; (c) the frequency with which such merchandise is stolen; (d) the nature of the defendant's commercial activities; and (e) the relatively limited time between the theft and the recovery of the merchandise."  *State v. Stewart*, No. 91199, 2009 WL 1424003, at *2 (Ohio Ct. App. May 21, 2009).

While the Amended Complaint does not address any of these factors, Plaintiff has already alleged that Defendants committed acts amounting to theft by deception.  In Ohio, "[t]he theft element of the crime of receiving stolen property is satisfied by theft by deception."  *United States v. Harris*, 961 F. Supp. 1127, 1136 (S.D. Ohio 1997) (citing Ohio Rev. Code §§ 2913.02, 2013-51).

Therefore, the Amended Complaint sufficiently establishes the underlying offense of receiving stolen property.

Accordingly, the Court finds that the Amended Complaint adequately identifies the commission of two or more specifically prohibited state criminal offenses.

### C. "Pattern of Corrupt Activity."

As used in the Ohio Revised Code, "pattern of corrupt activity" means "two or more incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event."  Ohio Rev. Code § 2923.31.

Here, Plaintiff has identified exactly two underlying criminal offenses: theft by deception and receiving stolen property.  When these two particular offenses concern the same parties and property, Ohio courts have found that they are so related in import that a defendant's conviction on both counts risks offending the Double Jeopardy Clauses of the United States and Ohio Constitutions.  *See State v. Wilson*, No. CA2005-10-096, 2006 WL 1586687, at *1-2 (Ohio Ct. App. June 12, 2006).  In the instant case, both of these underlying offenses are predicated upon the same set of operative facts, are raised against the same set of defendants, and involve the same property.  As such, they are sufficiently related to each other and connected in time in place that they are virtually indistinguishable for the purposes of the instant review.

Therefore, these underlying offenses essentially constitute a single event, and cannot support a pattern of corrupt activity within the meaning of the OCPA.

### D. Participation in an Enterprise.

Because Plaintiff fails to adequately allege the second element of its OCPA claim, it is not necessary for the Court to consider whether the Plaintiff adequately establishes the final element of participation in an enterprise.

### E. Conclusion.

For the foregoing reasons, Defendants' Motion for Judgment on the Pleadings is **GRANTED** with respect to Plaintiff's OCPA claim.

## VI. COUNT 8 – PIERCE CORPORATE VEIL

### A. Veil Piercing in General.

Piercing the corporate veil is not, in itself, a stand-alone claim under Ohio law. *See Fifth Third Bank v. Diversified Transp. Servs.*, 2010 Ohio Misc. LEXIS 547, *17-19 (Ohio C.P. Jan. 14, 2010). Defendants correctly note that Ohio has established a three-pronged test to determine when it is appropriate to hold individual shareholders liable for a corporation's wrongdoing. *See Belvedere Condo. Unit Owners' Assn. v. R.E. Roark Cos., Inc.*, 67 Ohio St.3d 274, 275 (Ohio 1993). However, Defendants refer to a dated version of the *Belvedere* test, which the Ohio Supreme Court later revised in *Dombroski v. WellPoint, Inc.*, 119 Ohio St.3d 506, 513 (Ohio 2008). Under the modern *Belvedere-Dombroski* test, a plaintiff must demonstrate all three of the following in order to pierce the corporate veil:

> (1) [C]ontrol over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) ["defendant shareholder exercised control over the corporation in such a manner as to commit fraud, an illegal act, or a similarly unlawful act"] against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong.

*Id.*

This Court has previously held that "each basis for piercing the corporate veil is an independent ground of recovery that must be specifically pleaded. As such, each element of the *Belvedere* test must be sufficiently well-pleaded 'showing that the pleader is entitled to relief[.']" *Orrand v. Kin Contractors,* LLC, No. 2:09 CV 1129, 2011 WL 1238301, at *4 (S.D. Ohio Mar. 30, 2011) (quoting Fed. R. Civ. P. 8(a)(2)).

### B. First Prong: Control Over Corporate Defendants.

The Sixth Circuit has described the *Belvedere* test's first prong as "a restatement of the alter-ego doctrine, which requires that plaintiff show that the individual and the corporation are

fundamentally indistinguishable." *Taylor Steel, Inc. v. Keeton*, 417 F.3d 598, 605 (6th Cir. 2005) (citation omitted).   There is no single established test for making this determination.   Rather, Ohio courts consider a range of non-exclusive factors, including:

> (1) grossly inadequate capitalization, (2) failure to observe corporate formalities, (3) insolvency of the debtor corporation at the time the debt is incurred, (4) shareholders holding themselves out as personally liable for certain corporate obligations, (5) diversion of funds or other … company property for personal use, (6) absence of corporate records, and (7) the fact that the corporation was a mere façade for the operations of the dominant shareholder(s).

*Id.*   However, the Court notes that veil piercing remains "an equitable remedy, available not where a set list of factors are established but where maintaining the corporate form would work injustice upon an innocent party." *Id.*

Plaintiff alleges that the non-corporate defendants (*i.e.*, the Ladds) "are the sole shareholders and corporate officers of all corporate defendants," and that they "exercised complete control o[ver] all corporate defendants[,] including all decision-making."  Am. Compl. ¶¶ 149-150.  Plaintiff also makes a number of allegations "on information and belief," including that the corporate defendants "appear to [have been] severely undercapitalized at a time [when P]laintiff was lead [sic] to believe that [they] … were adequately capitalized."  Am. Compl. ¶ 153.   Although the corporate defendants' financial records are, presumably, "within the possession and control" of Defendants (*Apex Tool Grp., LLC*, 2014 WL 6748344, at *9), Ohio case law is adamant that "conclusory statements must rest on pleaded facts.  This is not only so of legal boilerplate (*e.g.*, 'conspiracy,' 'willfully') but also of assertions nominally cast in factual terms but so general and conclusory as to amount merely to an assertion that unspecified facts exist to conform to the legal blueprint." *Menard v. CSX Transp., Inc.*, 698 F.3d 40, 45 (1st Cir. 2012) (citations omitted).  While "some latitude may be appropriate where a plausible claim [is] indicated 'based on what is known … [and] some of the information needed may be in the

control of [the] defendants." *Id.* Plaintiff's well-pled allegations fail to give any plausible indication that Defendants were financially insolvent at any point during the time in question.

Similarly, the "information and belief" allegations that the Ladds "exercised total dominion and control over the corporate defendants" and that the corporate defendants "operated as the alter ego of the individual defendants" (Am. Compl. ¶ 151) are wholly unsupported by any concrete factual allegations, and are thus little more than conclusory statements. As such, these allegations are not sufficient to plausibly support an inference of the requisite level of control.

In addition, Plaintiff argues that certain information relevant to this and other parts of its Amended Complaint is not yet accessible, and that "discovery will easily show how the defendants' assets have jumped from entity to entity, such as their clientele (e.g, dental practices)." Pl.'s Mem. in Opp'n., at 7.

In general, "the question of whether [a shareholder] exercised a degree of control over [a corporation] justifying [a] Court's holding it accountable … is a fact-sensitive question which … should not be answered until the Plaintiff[] ha[s] had some opportunity to conduct discovery on this matter." *Orrand*, 2011 WL 1238301, at *4 (quoting *Bledsoe v. Emery Worldwide Airlines*, 258 F. Supp. 2d 780, 787 (S.D.Ohio 2003)). Indeed, "[d]ue to the importance of discovery in establishing the element of control," this Court has previously denied motions to dismiss veil-piercing claims "for failure to plead sufficient facts regarding the requisite level of control necessary to hold [a shareholder] personally liable." *Id.* at *4.

Accordingly, while the Plaintiff's well-pleaded allegations are insufficient to affirmatively establish the element of control under *Belvedere*, the Court declines to dismiss any veil-piercing claims against the Ladds on this sole basis at this stage.

### C. Second Prong: Underlying Illegal or Unlawful Act.

In Ohio, piercing the corporate veil remains a "rare exception" limited to extreme circumstances amounting to "fraud, an illegal act, or a similarly unlawful act." *Dombroski,* 119 Ohio St.3d at 542. The commission of a mere "unjust or inequitable act" will not do. *Id.* at 544. After modifying the second prong to include "similarly unlawful acts," *Dombroski* cautions that "[c]ourts should apply this limited expansion cautiously toward the goal of piercing the corporate veil only in instances of extreme shareholder misconduct." *Dombroski*, 119 Ohio St.3d at 545. In other words, even once a plaintiff establishes the element of sufficient control, *Belvedere* "requires for the control to have been exercised for specific egregious acts" before veil-piercing may occur. *Orrand,* 2011 WL 1238301, at *4.

The "Pierce Corporate Veil" section of the Amended Complaint incorporates by reference Plaintiff's fraud claim. Am. Compl. ¶ 155. When a plaintiff "seeks [to] pierce the corporate veil on the basis of fraud, it 'must state with particularity the circumstances constituting [the] fraud.'" *Orrand*, 2011 WL 1238301, at *4. Because Plaintiff's fraud claim survives the instant review, its well-pleaded allegations are sufficient to establish an illegal or unlawful act in accordance with the *Belvedere-Dombroski* test.

### D. Third Prong: Resulting Injury or Unjust Loss.

Because this section of the Amended Complaint incorporates by reference the well-pled factual allegations of injury in Plaintiff's fraud claim (Am. Compl. ¶ 147), Plaintiff adequately establishes this element in accordance with *Belvedere-Dombroski*.

### E. Conclusion.

For these reasons, the Defendants' Motion for Judgment on the Pleadings is **DENIED** with respect to Plaintiff's attempt to pierce the corporate veil, to the extent that such veil-piercing is premised on a viable claim for fraud.

## VII. COUNT 9 – FRAUDULENT TRANSFER

### A. Type of §1336 Claim Asserted; Fraudulent Transfer in General.

§1336.04 of the Ohio Revised Code provides two general ways for a plaintiff to bring an action for fraudulent transfer. *Blood v. Nofzinger*, 162 Ohio App. 3d 545, 557 (Ohio Ct. App. 2005). An "actual intent" claim under §1336.04(A)(1) requires a showing of "(1) a conveyance or incurring of a debt; (2) made with actual intent to defraud, hinder, or delay; (3) present or future creditors." *Id.* at 557. In contrast, a plaintiff may properly allege a "constructive intent" fraudulent transfer under §1336.04(A)(2) if:

> no reasonably equivalent value was received in exchange for the transfer and if one of the following applies: (a) The debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; (b) The debtor intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

*Id.* at 560.

In the "Fraudulent Transfer" section of the Amended Complaint, Plaintiff alleges that Defendants "transferred the proceeds of the materials shipped to them by the plaintiff to other persons with the intent to hinder, delay or defraud the creditors of the corporate defendants." Am. Compl. ¶ 156. While Plaintiff fails to specify which statutory provision applies to this claim, the allegation of "intent to hinder, delay or defraud" closely tracks the language of §1336.04(A)(1), indicating an "actual intent" claim for fraudulent transfer.

## B. Applicability of Rule 9(B) Requirements.

Defendants argue that Plaintiff's fraudulent transfer claim must comply with the particularity requirements of Federal Rule of Civil Procedure 9(b).  Rule 9(b) "refers to 'averments of fraud,' which [the Southern District of Ohio] understands to describe the type of claim asserted rather than the naming of such claim."  *Van-Am. Ins. Co. v. Schiappa, et al.,* 191 F.R.D. 537, 542 (S.D. Ohio 2000).

The Ohio Supreme Court "has ruled that Ohio [C]ivil [R]ule 9(B), which is identical to [Fed. R. Civ. P.] 9(b), does not apply to fraudulent conveyance claims made under … §1336.04." *In re Reg'l Diagnostics, LLC*, 372 B.R. 3, 17 (Bankr. N.D. Ohio 2007).  Nevertheless, "[w]hile a decision of Ohio's highest court regarding a rule of procedure identical to a federal rule of civil procedure is entitled to great deference, that opinion is not binding on a federal forum."  *Id.*

Even a claim made under Ohio's fraudulent transfer statute is subject to Federal Rule 9(b) pleading requirements if it alleges actual intent to hinder, delay, or defraud creditors.  *See Schiappa,* 191 F.R.D. at 543.  Accordingly, in order to survive the instant review, Plaintiff's fraudulent transfer claim must meet the particularity requirements of Rule 9(b), including the "who, what, when, where, and how" of the alleged fraud.

## C. Identifying Type of Alleged Transfer.

With respect to fraudulent transfer claims, Ohio courts have held that "the pleader must provide more than a mere recitation of the statutory elements. Instead, the pleader must identify the set of facts upon which he seeks to recover."  *In re Motorwerks, Inc.*, 371 B.R. 281, 292 (Bankr. S.D. Ohio 2007) (internal citations omitted).  At minimum, the pleader must "reasonably identify the types of transfers sought to be avoided" in order to put the opposing party on sufficient notice of the claim to prepare an appropriate affirmative defense.  *Id.* at *293.

While Plaintiff generally identifies the contents of the alleged transfer as "the proceeds of the materials shipped to [Defendants] by the plaintiff" (Am. Compl. ¶ 156), the Amended Complaint fails to identify the date, amount, or type of transfer allegedly at issue. Thus, Plaintiff fails to plead an "actual intent" fraudulent transfer with the requisite degree of specificity.

### D. Statutory "Badges of Fraud."

The Ohio Revised Code outlines eleven non-exclusive factors to aid in determining the existence of "actual intent" in a §1336.04(A)(1) claim. A plaintiff may establish an "actual intent" fraudulent conveyance by demonstrating as few as three of these "badges of fraud." *United States v. Galemmo*, No. 1:13-CR-141, 2015 WL 4450669, at *6 (S.D. Ohio July 20, 2015). Here, Plaintiff does not allege or make reference to any of §1336.04's enumerated "badges of fraud." Therefore, Plaintiff fails to create an inference of fraudulent intent *per se*.

### E. Possible "Constructive Intent" Claim.

Having established that Plaintiff fails to adequately allege an "actual intent" fraudulent transfer, the Court next considers whether Plaintiff's claim may survive under a theory of constructive intent. "Constructive fraud focuses on the effect of the transaction(s) and may exist even where the debtor has no actual intent to commit fraud." *Blood v. Nofzinger*, 162 Ohio App. 3d 545, 560 (Ohio Ct. App. 2005).

As discussed above, Rule 9(b)'s heightened pleading standard does not apply to §1336.04 claims unless they rely on actual fraudulent intent. *See In re Motorwerks, Inc.*, 371 B.R. at 295 (holding that there is "no logical reason" to require pleader "to plead a defendant's fraud or misconduct with specificity if such fraud or misconduct is not an element of the trustee's fraudulent transfer claim."). Thus, a "constructive intent" fraudulent transfer claim "need only

allege that the transfer was made without reasonably equivalent value while the debtor was insolvent." *Id.*

Here, allegations that Defendants "have made zero payments" towards their debt to Plaintiff satisfies the element of "no reasonably equivalent value" received. Am. Compl. ¶ 66. However, as discussed in the veil-piercing section, Plaintiff fails to plead any factual allegations sufficient to plausibly support an inference that Defendants were insolvent at any time during the transactions in question. Therefore, the Amended Complaint, as written, fails to allege adequate facts to support a cause of action for fraudulent transfer under §1336.04(A)(2).

### F. Conclusion - § 1336 Claim; Fraudulent Transfer.

For the foregoing reasons, Defendants' Motion for Judgment on the Pleadings is **GRANTED** with respect to Plaintiff's fraudulent transfer claim.

### VIII. CONCLUSION

For all the foregoing reasons, Defendants' Motion for Judgment on the Pleadings (ECF No. 41) is **GRANTED in part and DENIED in part**, in accordance with this Opinion and Order.

**IT IS SO ORDERED.**

_____9 - 1 - 2016_____
**DATE**

_____
**EDMUND A. SARGUS, JR.**
**CHIEF UNITED STATES DISTRICT JUDGE**